Filed 7/15/26  Vanowen Realty v. Houston CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| VANOWEN REALTY LLC et al., | B344553 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 24 STCV05197) |
| v. | |
| PLOENPIDH HOUSTON et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kerry Bensinger, Judge.  Affirmed.

Wood, Smith, Henning & Berman, Sam L. McDermott, Jade N. Tran and Zeana A. Zoreikat for Defendants and Appellants.

Law Offices of Patrick Torsney, Patrick Torsney; Cochran, Davis & Associates and Lisa Kralik Hansen for Plaintiffs and Respondents.

————————————

# INTRODUCTION

This matter involves a commercial lease between Vanowen Realty LLC as the lessor and Ploenpidh Houston as the lessee. Vanowen sued Houston, Houston Hospitality LLC (Houston Hospitality), a company owned by Houston's two sons, and NBK Branded Entertainment, Inc. (NBK) for various tort and contract causes of action. Houston and Houston Hospitality moved to compel arbitration pursuant to an arbitration provision in the lease, and they appeal from the trial court's denial of that motion. We affirm because Vanowen's claims do not fall within the scope of the arbitration provision.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Lease*

Vanowen and a number of individuals own a commercial property located in Hollywood.[1]  On June 1, 2016, Houston leased

---

[1]    The owners of the property and the plaintiffs and respondents in this matter are: Vanowen Realty LLC; Arthur J. Saffir, Trustee of the Arthur J. Saffir Living Trust Dated February 9, 2000 and Restated September 8, 2011; Donna M. Zenobia Saffir, Trustee Of The Donna M. Zenobia Saffir Living Trust Dated February 9, 2000 and Restated September 8, 2011; Oliver S. Saffir & Patricia J. Saffir, Trustees of the Oliver S. Saffir & Patricia J. Saffir Trust Agreement Dated June 25, 1990; Warren Faubel & Priscilla Faubel, as Trustees of the Faubel Family Trust U/T/D Dated March 4, 1992 as Restated September 12, 2012; and Pandora Victor, as Trustee Under the Pandora

the property from Vanowen for the purpose of operating a restaurant. The commercial lease between Vanowen and Houston specified a term of 10 years and 18 days, commencing on May 17, 2016, and ending on May 31, 2026. The lease allowed for regular rental increases pursuant to a schedule, but it provided, "These rental amounts shall only apply if Ploenpidh P. Houston remains the Lessee on this lease. In the event that this lease is assigned, the rental amount due each month shall be determined by paragraphs 6 and 7 of the addendum to this lease." Paragraphs 6 and 7 of the lease addendum specified that the lease rates were below market and could be extended only to Houston's sons with Vanowen's consent. Other parties seeking to sublet or rent the property would be subject to higher rates.

Paragraph 11A of the commercial lease (paragraph 11A) required Vanowen to make repairs within 60 days in the event of "a partial destruction of said premises." Paragraph 11A further set out circumstances under which Houston would be entitled to a proportionate deduction in rent while such repairs were being made or a proportionate rebate in rent if the repairs exceeded 60 days. Either party could terminate the lease if Vanowen elected not to make "such repairs which cannot be made within sixty (60) days, or such repairs cannot be made under such laws and regulations . . ." Finally, section 11A set out an agreement to

---

Victor Trust Agreement Dated May 22, 1997 as Restated on March 29, 2011.

Vanowen Realty LLC is the only signatory to the lease agreement with Houston. For ease of reference, we refer to the plaintiffs and respondents collectively as Vanowen.

3

arbitrate: "In the event of any dispute between Lessor and Lessee relative to the provisions of this paragraph, they shall each select an arbitrator, the two arbitrators so selected shall select a third arbitrator and the three arbitrators so selected shall hear and determine the controversy and their decision thereof shall be final and binding on both Lessor and Lessee who shall bear the cost of such arbitration equally between them."

Consistent with paragraphs 6 and 7 of the lease addendum, paragraph 12 of the lease prohibited Houston from assigning the lease or subletting all or part of the property "without the written consent of Lessor first had and obtained. . . . Any such assignment or subletting, whether by operation of law or otherwise, without such written consent first had and obtained shall be void, and shall, at the option of Lessor, terminate this lease."

B.    *The Unlawful Detainer Action*

On January 26, 2024, Vanowen served Houston with a 30-Day Notice to Quit, stating Houston breached the lease because "on or about September 15, 2022, your unauthorized subtenant negligently caused a grease fire to destroy the kitchen area of the premises." On July 12, 2024, Vanowen filed a form complaint for unlawful detainer against Houston seeking $616 per day from February 27, 2024, as fair rental value of the property. Vanowen also requested forfeiture of the agreement and reasonable attorney fees.

On October 16, 2024, Houston moved to compel arbitration of the unlawful detainer action, citing paragraph 11A of the lease. She argued, "This is not an unlawful detainer action for non-payment of rent or any other statutory basis, but rather it is

4

an action seeking the court to enforce a termination provision that explicitly provides for arbitration." Although Vanowen initially resisted arbitration, it later agreed to arbitrate the unlawful detainer action. The record before us is silent regarding the result of the arbitration.

C. *The Underlying Action*

On March 1, 2024, after it had served Houston with the 30-day notice to quit, but before it filed the unlawful detainer complaint, Vanowen sued Houston, Houston Hospitality, and NBK for negligence, breach of contract, intentional interference with contract, fraud, and intentional and negligent interference with prospective economic advantage. Vanowen alleged Houston allowed Houston Hospitality, a company owned and operated by Houston's children, to "act as the tenant" and sublet the property to NBK without Vanowen's consent. NBK allegedly operated a club on the property called Beetlehouse. According to Vanowen, Houston and Houston Hospitality profited from the below market rent given to Houston by subletting the property to NBK at a higher rate. Vanowen discovered the sublet in September 2022. The complaint further alleged Houston stopped paying rent in March 2020 but made one payment of $215,568 in May 2023 to stave off eviction. Vanowen further alleged Houston failed to make any subsequent payments and allegedly owed it over $425,000 in back rent.

The first cause of action against all defendants alleged they were negligent in their use of the property "such that they caused a hostile fire to spread inside the property." The second cause of action against Houston alleged a breach of multiple terms of the lease agreement, including causing property damage, subletting

5

the property without permission, failing to obtain the required liquor license, altering the property without permission, and failing to maintain sufficient insurance as required. The third cause of action against Houston Hospitality alleged it intentionally interfered with Vanowen's contractual relationship with Houston. The fourth cause of action against Houston and Houston Hospitality for fraud alleged they "entered into a conspiracy to subvert the lease and obtain more favorable terms without processing the subletting rules outlined in the lease." The fifth and sixth causes of action against Houston Hospitality alleged intentional and negligent interference with prospective economic advantage. As damages, Vanowen sought the additional rental value that NBK paid to use the property; $750,000 in property damage; loss of use of the property in the amount of $20,338 per month; punitive damages; and attorney fees.

The defendants answered the complaint. On August 28, 2024, Houston and Houston Hospitality moved to compel arbitration under paragraph 11A and stay the action pending arbitration. Houston's counsel stated in her declaration in support of the motion that Houston had sought to arbitrate the unlawful detainer matter after receiving the 30-day Notice to Quit, and Vanowen's lawyer agreed to arbitration. She further stated that Vanowen then retained new counsel, who filed this complaint against Houston, Houston Hospitality, and NBK. Vanowen opposed arbitration, asserting paragraph 11A applied only to issues of possession or cancellation of the lease, which was not at issue in the case. Further, its complaint included defendants who were not signatories to the lease. On October 8, 2024, the trial court ruled that the unlawful detainer action and

6

this underlying action were not related under California Rules of Court, rule 3.300.

The trial court denied the motion to compel arbitration, concluding that paragraph 11A limited arbitration to disputes concerning repairs, deductions in rent, and termination of the lease.  The court reasoned, "None of those issues are implicated by Plaintiffs' claims in this action (as opposed to the unlawful detainer action).  While the fire may be what caused the damage, the relief sought in the complaint does [not] come within the scope of Paragraph 11A."  Houston and Houston Hospitality timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

"Where, as here, the parties to a lawsuit have executed an arbitration agreement, a 'threshold question . . . presented by every motion or petition to compel arbitration' is 'whether the parties' dispute falls within the scope of that agreement.' " (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 601.) " 'In determining the scope of an arbitration [agreement], "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." ' " (*Id.* at p. 602, accord, *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)  "The scope of arbitration is, of course, a matter of agreement between the parties," although "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323; accord,

7

*Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65–66 ["California has a strong public policy favoring arbitration and, as a result, ambiguities or doubts about the scope of the arbitration provision should be resolved in favor of arbitration."].) "The policy favoring arbitration, however, does not apply when unambiguous language shows the parties did not agree to arbitrate all or a part of the dispute." (*Duran*, at p. 66; accord, *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC* (2022) 74 Cal.App.5th 869, 876.) " ' "[W]hile California public policy favors arbitration, ' " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.' " ' " ' " (*Mar v. Perkins* (2024) 102 Cal.App.5th 201, 212.)

" ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court." ' " (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687; accord *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 [appellate court is " 'not bound by the trial court's construction or interpretation' "].)

B.    *Vanowen's Complaint Against Houston, Houston Hospitality, and NBK Does Not Come Within the Scope of the Arbitration Provision in Paragraph 11A*

Here, there is no dispute as to what "the provisions of" Paragraph 11A address.  Houston states that "Section 11A of the Lease . . . addresses the parties' rights and obligations in the event of partial destruction of the Premises, requiring repairs, including the Respondents' duty to make repairs, time-to-repair

8

options, rent deductions during repairs, potential termination if repairs cannot be made within 60 days, and a requirement that 'in the event of any dispute between Landlord and Tenant relative to the provisions of this paragraph,' the parties shall submit the dispute to arbitration." Thus, arbitration is required only when a dispute "is relative to" repairs, rent deductions during repairs, and termination if repairs cannot be made within 60 days.

Vanowen's complaint does not allege that it had any duty to make repairs but was excused from doing so, that it exercised any time-to-repair options, or that Houston was not entitled to rent deductions during repairs. Nor does the complaint allege Vanowen is exercising its option to terminate the lease because repairs cannot be made within 60 days. Additionally, Houston does not argue any of her rights under paragraph 11A are defenses or counterclaims to Vanowen's complaint. Moreover, five of the six causes of action are alleged against nonsignatories NBK and Houston Hospitality for their separate tortious conduct.[2] Under these circumstances, Vanowen's claims in this matter do not fall within the scope of the arbitration clause contained in paragraph 11A.

Houston focuses on the kitchen fire as a catalyst for Vanowen's complaint, arguing that "[a]ll of Respondents' causes

_____

[2]     Houston argues NBK and Houston Hospitality, although nonsignatories to the lease, may compel Vanowen to arbitration, citing *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262. We need not decide whether NBK and Houston Hospitality may do so because we conclude Vanowen's claims against Houston, Houston Hospitality, and NBK do not fall with the scope of the arbitration provision in paragraph 11A.

of action arise from the same nucleus of fact: damage to the Premises caused by the Fire, the alleged failure to make timely repairs, and the resulting disputes over rent deductions and lease termination rights."  She further asserts, "but for the Lease and the parties' repair-related obligations triggered by the Fire, none of Respondents' claims would exist."

Houston's argument ignores Vanowen's primary complaint that she sublet the property in violation of the lease.  These allegations are independent of causes of action arising from the kitchen fire and form the basis for breach of contract (second cause of action), interference with contract (third cause of action), fraud (fourth cause of action) and interference with prospective economic advantage (fifth and sixth causes of action).  Although Vanowen's first cause of action for negligence arises from the allegation that all three defendants' actions led to the kitchen fire, these allegations say nothing about repair obligations, rent reductions, or termination of the lease based on failure to repair.  Nor does Houston argue her rights or obligations under paragraph 11A serve as defenses or counterclaims to the negligence claim.

For the same reason, Houston's expansive interpretation of the phrase "relative to" as encompassing Vanowen's tort and contract causes of action fails.  While similar language, such as " ' "arising out of or relating to," ' " has been broadly construed (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1327), here the phrase cannot be so broadly read.  The unauthorized sublet allegations are simply not "relative to" the repair and lease termination provisions of paragraph 11A.  Indeed, the complaint alleged the unauthorized sublet existed before the kitchen fire occurred.  Additionally, the topic of

10

subletting is addressed in paragraph 12 of the lease and paragraphs 6 and 7 of the lease addendum.  Extending the arbitration provision to other parts of the lease would render meaningless the provision that arbitration is limited to disputes "relative to the provisions of this paragraph."

Houston next argues that this case is subject to arbitration because Vanowen alleged she owed it over $425,000 in back rent.  We are not persuaded this allegation alone brings the entire complaint within the scope of the arbitration agreement.  While paragraph 11A allows for a reduction in rent during repairs, it is undisputed that no repairs were made.  In all events, Vanowen sought to recover the fair rental value of the property in its unlawful detainer action.  Any dispute associated with reductions in rent may be resolved in that matter.[3]

Houston also argues arbitration is required because Vanowen's claims in this action are "intertwined" with the provisions of paragraph 11A.  Houston cites *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 (*Boucher*) for the proposition that "[c]laims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable."  *Boucher* does not stand for this proposition.  There, the plaintiff filed suit against his employer, with whom he had an employment contract containing an arbitration clause, and the employer's corporate successor entity, who did not have an employment contract with the plaintiff.  *Boucher* held the successor entity could enforce the arbitration agreement: "a nonsignatory defendant may invoke an arbitration clause to

_____

[3]     We do not imply or reach any conclusions as to the effect of the arbitration of Vanowen's unlawful detainer action on this matter.

11

compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." (*Id*. at p. 271.)  Houston may not rely on *Boucher* to bootstrap Vanowen's nonarbitrable claims to arbitration.

Finally, Houston argues the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applies because "the lease evidenced interstate commerce in operating a restaurant, including procurement of supplies across state lines."  Even assuming the FAA applies to this matter, "the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. . . .  It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (*Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior University* (1989) 489 U.S. 468, 478.)  We have determined the parties did not agree to arbitrate the claims brought by Vanowen in this action and whether the FAA applies does not change that result.[4]

---

[4]      Because we conclude this action did not come within the scope of the arbitration provision of paragraph 11A, we need not address Vanowen's argument that Houston and Houston Hospitality waived their rights to compel arbitration.

12

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Vanowen may recover its costs on appeal.


MARTINEZ, P. J.

We concur:



FEUER, J.



STONE, J.